UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| REBECCA J. SHERMAN, <br><br> Plaintiff, <br><br> vs. <br><br> NANCY A. BERRYHILL, Acting Commissioner of Social Security, <br><br> Defendant. | No. 1:15-CV-03112-FVS <br><br> **ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT,** *INTER ALIA* |

**BEFORE THE COURT** are Rebecca J. Sherman's Motion For Substitution Of Party (ECF No. 22), Plaintiff's Motion For Summary Judgment (ECF No. 12) and the Defendant's Motion For Summary Judgment (ECF No. 17).

## SUBSTITUTION

Rebecca J. Sherman, the adult daughter of the claimant, David Barry Sherman, seeks to be substituted as Plaintiff. In her declaration (ECF No. 23), she advises that Mr. Sherman died on July 5, 2015. The court considers this declaration to constitute the "service of a statement noting the death" as required by Fed. R. Civ. P. 25(a)(1). In its Order To Show Cause (ECF No. 19), this court indicated it had reason to believe Mr. Sherman was deceased, but Ms. Sherman's declaration confirms this is so. Ms. Sherman's Motion For Substitution Of Party (ECF No. 22) is filed contemporaneously with "the statement noting the death" and therefore, within 90 days after the service of a statement noting the death, as required by Fed. R. Civ. P. 25(a)(1). As a surviving

**ORDER GRANTING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT- 1**

family member of the claimant, Ms. Sherman and her brother, Adam Sherman, the adult son of the claimant, are eligible, pursuant to 20 C.F.R. §404.503(b)(5), to inherit equal shares of any Title II benefits that might be awarded.[1]

Ms. Sherman's Motion For Substitution Of Party (ECF No. 22) is **GRANTED** and she is substituted for David Barry Sherman as the Plaintiff in the captioned matter.

## JURISDICTION

David Barry Sherman protectively applied for Title II Disability Insurance benefits (DIB) on January 5, 2012. The application was denied initially and on reconsideration. Plaintiff timely requested a hearing which was held on July 23, 2013, before Administrative Law Judge (ALJ) Stephanie Martz. Plaintiff testified at the hearing, as did Vocational Expert (VE) Scott Whitmer. On October 30, 2013, the ALJ issued a decision finding the Plaintiff not disabled. The Appeals Council denied a request for review of the ALJ's decision, making that decision the Commissioner's final decision subject to judicial review. The Commissioner's final decision is appealable to district court pursuant to 42 U.S.C. §405(g).

## STATEMENT OF FACTS

The facts have been presented in the administrative transcript, the ALJ's decision, the Plaintiff's and Defendant's briefs, and will only be summarized here. At

---

[1] They do not qualify under 20 C.F.R. §404.503(b)(2) because they are not under 18, there is no indication they became disabled prior to age 22, and no indication they qualify as full-time students under 20 C.F.R. §404.367. See 20 C.F.R. §404.350(a).

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 2**

the time of the administrative hearing, claimant was 58 years old. He had past relevant work experience as an attorney. Claimant alleged disability since July 1, 2005, on which date he was 50 years old. His date last insured for Title II benefits was December 31, 2007.

## STANDARD OF REVIEW

"The [Commissioner's] determination that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence...." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983). Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975), but less than a preponderance. *McAllister v. Sullivan*, 888 F.2d 599, 601-602 (9th Cir. 1989); *Desrosiers v. Secretary of Health and Human Services*, 846 F.2d 573, 576 (9th Cir. 1988). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420 (1971). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. *Beane v. Richardson*, 457 F.2d 758, 759 (9th Cir. 1972); *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965). On review, the court considers the record as a whole, not just the evidence supporting the decision of the Commissioner. *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989); *Thompson v. Schweiker*, 665 F.2d 936, 939 (9th Cir. 1982).

It is the role of the trier of fact, not this court to resolve conflicts in evidence. *Richardson*, 402 U.S. at 400. If evidence supports more than one rational interpretation, the court must uphold the decision of the ALJ. *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984).

A decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir.

1987).

## ISSUES

Plaintiff argues the ALJ erred in: 1) failing to determine whether claimant was disabled following his date last insured and failing to determine an onset date for claimant's mental health impairments; and 2) not providing specific, clear and convincing reasons to discount claimant's credibility.

## DISCUSSION

**SEQUENTIAL EVALUATION PROCESS**

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). The Act also provides that a claimant shall be determined to be under a disability only if her impairments are of such severity that the claimant is not only unable to do her previous work but cannot, considering her age, education and work experiences, engage in any other substantial gainful work which exists in the national economy. *Id*.

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. § 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S.Ct. 2287 (1987). Step one determines if she is engaged in substantial gainful activities. If she is, benefits are denied. 20 C.F.R. § 404.1520(a)(4)(i). If she is not, the decision-maker proceeds to step two, which determines whether the claimant has a medically severe impairment or combination of impairments. 20 C.F.R. § 404.1520(a)(4)(ii). If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied. If

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 4**

the impairment is severe, the evaluation proceeds to the third step, which compares the claimant's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(iii); 20 C.F.R. § 404 Subpart P, App. 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step which determines whether the impairment prevents the claimant from performing work she has performed in the past. If the claimant is able to perform her previous work, she is not disabled. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant cannot perform this work, the fifth and final step in the process determines whether she is able to perform other work in the national economy in view of her age, education and work experience. 20 C.F.R. § 404.1520(a)(4)(v).

The initial burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971). The initial burden is met once a claimant establishes that a physical or mental impairment prevents her from engaging in her previous occupation. The burden then shifts to the Commissioner to show (1) that the claimant can perform other substantial gainful activity and (2) that a "significant number of jobs exist in the national economy" which claimant can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

**ALJ'S FINDINGS**

The ALJ found that through the date last insured (December 31, 2007), claimant had the following medically determinable impairments, none of which were "severe:" hypertension; hyperlipidemia; benign prostatic hypertrophy; chronic osteoarthritis; chronic diarrhea; and history of mitral valve prolapse. Accordingly, the ALJ

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 5**

concluded the claimant was not disabled for a period of 12 months at anytime between July 1, 2005 and December 31, 2007.

**MENTAL HEALTH IMPAIRMENT/DEVELOPMENT OF RECORD**

Plaintiff asserts that pursuant to Social Security Ruling (SSR) 83-20, the ALJ was obliged to determine whether the claimant was disabled following his date last insured (December 31, 2007) and that instead of doing so, she disregarded the medical evidence after that date and failed to determine an onset date for the claimant's mental health impairments.

After discussing the medical record applying to the period prior to December 31, 2007, the ALJ said this about the post-December 31, 2007 record:

> The remaining materials in the record fall beyond the period at issue, and details (sic) complaints for various mental health diagnoses including bipolar disorder, rule out diagnosis of attention deficit disorder; and reported history of depression. [Citations omitted]. Notably, the first mention of these impairments is in 2010, three years beyond the date last insured. [Citations omitted]. There is no evidence that these diagnoses relate to the period at issue, and the claimant had no regular mental health treatment prior to July of 2010. [Citations omitted]. At no time did anyone who treated the claimant relate these diagnoses back to the time at issue, and treatment notes do not indicate that the claimant had prior mental health problems. The claimant saw doctors, albeit infrequently, but did not mention any mental health symptoms or complaints. His providers noted no symptoms consistent with his complaints in 2010. Therefore, I find that the claimant did not have a medically determinable impairment prior to his date last insured in December 2007.
>
> . . . .
>
> As for the opinion evidence, the record contains notes and opinions regarding the claimant's functioning outside the applicable time period. [Citations omitted]. I afford these opinions little weight because they do not discuss the claimant's level of functioning during the period at issue.

(AR at p. 24).

SSR 83-20 sets forth guidelines for determining the onset date of disability. It

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 6**

directs that a judgment regarding the onset date of disability "must have a legitimate medical basis" and that the ALJ "should call on the services of a medical advisor when onset must be inferred." *Sam v. Astrue*, 550 F.3d 808, 810 (9th Cir. 2008), citing SSR 83-20. "In the event that the medical evidence is not definite concerning the onset date and medical inferences need to be made, SSR 83-20 requires the [ALJ] to call upon the services of a medical advisor and to obtain all evidence which is available to make the determination." *Id*., quoting *DeLorme v. Sullivan*, 924 F.2d 841, 848 (9th Cir. 1991). In *Sam*, the Ninth Circuit rejected the plaintiff's contention that SSR 83-20 applied to his case. It noted that SSR-83-20 defines the disability onset date as "the first day an individual is disabled as defined in the Act and the regulations." SSR 83-20. 550 F.3d at 810. Because the ALJ found Sam was not disabled "'*at any time* through the date of [the] decision' the question of *when* he became disabled did not arise and the procedures prescribed in SSR 83-20 did not apply." *Id*. (emphasis in original).

In the case at bar, the court agrees that, at this juncture, SSR 83-20 does not apply because that rule addresses the situation in which the ALJ makes a finding that a person is disabled and the question arises when the disability arose. Obviously here, the ALJ did not make a finding that claimant was disabled. She found the claimant not disabled because he did not suffer from a "severe" medically determinable impairment (physical or mental) during the period between July 1, 2005 and December 31, 2007.[2] As indicated above, the fact that a medically determinable impairment is "severe" does not equate to disability as "severity" means only that the claimant has satisfied his burden at Step Two of the sequential evaluation process. It would still have to be established that the claimant's "severe" medically determinable

---

[2] She found the claimant had medically determinable physical impairments during that period, but that they were not "severe."

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 7**

impairments precluded him from substantial gainful activity during a continuous 12 months period between July 1, 2005 and December 31, 2017.

A "severe" impairment is one which significantly limits physical or mental ability to do basic work-related activities. 20 C.F.R. § 404.1520(c). It must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques. It must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not just the claimant's statement of symptoms. 20 C.F.R. § 404.1508.

Step two is a *de minimis* inquiry designed to weed out nonmeritorious claims at an early stage in the sequential evaluation process. *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996), citing *Bowen*, 482 U.S. at 153-54 ("[S]tep two inquiry is a *de minimis* screening device to dispose of groundless claims"). "[O]nly those claimants with slight abnormalities that do not significantly limit any basic work activity can be denied benefits" at step two. *Bowen*, 482 U.S. at 158 (concurring opinion). "Basic work activities" are the abilities and aptitudes to do most jobs, including: 1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; 2) capacities for seeing, hearing, and speaking; 3) understanding, carrying out, and remembering simple instructions; 4) use of judgment; 5) responding appropriately to supervision, co-workers and usual work situations; and 6) dealing with changes in a routine work setting. 20 C.F.R. § 404.1521(b).

The Commissioner has stated that "[i]f an adjudicator is unable to determine clearly the effect of an impairment or combination of impairments on the individual's ability to do basic work activities, the sequential evaluation should not end with the not severe evaluation step." *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005), citing SSR 85-28 (1985). An ALJ may find that a claimant lacks a medically severe impairment or combination of impairments only when her conclusion is "clearly

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 8**

established by medical evidence." *Id*. In *Webb*, the Ninth Circuit found that although the medical record painted an incomplete picture of the plaintiff's overall health during the relevant period, it included evidence of problems sufficient to pass the *de minimis* threshold of step two. *Id*. Furthermore, although the plaintiff ultimately bore the burden of establishing his disability, the ALJ had an affirmative duty to supplement the plaintiff's medical record, to the extent it was incomplete, before rejecting the plaintiff's application at such an early stage in the analysis. *Id*. The circuit noted:

> "In Social Security cases, the ALJ has a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered." *Brown v. Heckler*, 713 F.3d 441, 443 (9th Cir. 1983) (per curiam). The ALJ's duty to supplement a claimant's record is triggered by ambiguous evidence, the ALJ's own finding that the record is inadequate or the ALJ's reliance on an expert's conclusion that the evidence is inadequate. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001).

*Id.*[3]

Here, the ALJ's conclusion that the claimant did not have a medically determinable mental health impairment between July 1, 2005 and December 31, 2007,

---

[3] The ALJ has a basic duty to inform himself about facts relevant to his decision. *Heckler v. Campbell*, 461 U.S. 458, 471 n. 1, 103 S.Ct. 1952 (1983). The ALJ's duty to develop the record exists even when the claimant is represented by counsel. *Tonapetyan*, 242 F.3d at 1150. The duty is triggered by ambiguous or inadequate evidence in the record and a specific finding of ambiguity or inadequacy by the ALJ is not necessary. *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011).

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 9**

is not "clearly established by medical evidence," specifically the medical evidence after December 31, 2007. The record is not unequivocal that Plaintiff's post-December 31, 2007 mental health diagnoses do not relate to the period between July 1, 2005 and December 31, 2007, nor is the record unequivocal that no medical provider related these diagnoses "back to the time at issue" and did not indicate the claimant had prior mental health problems.[4]

      Claimant first met with psychiatrist Philip Rodenberger, M.D., in July 2010. Dr. Rodenberger diagnosed the claimant with bipolar disorder, "currently manic," but qualified his diagnosis as follows: "I do believe that this gentleman is bipolar, although due to his past use of amphetamines, it is difficult to be absolutely certain that this is not related to drug abuse and dependency." (AR at p. 416). Dr. Rodenberger's second visit with the claimant occurred in October 2011. At that time, Dr. Rodenberger wrote: "It is **significant** that although this gentleman has a law degree, he has not been able to practice for at least three years and on a sustained basis for many years." (AR at p. 415) (emphasis added). Dr. Rodenberger continued to consider the claimant "as being a bipolar disordered individual," although reiterating that it was "difficult to know to what extent his past use of illicit substances has affected his brain function." (AR at p. 415). Following his third meeting with the claimant in November 2011, Dr. Rodenberger referred to a "possible diagnosis of bipolar disorder mixed type or attention deficit disorder." (AR at p. 413). In December 2011, Dr. Rodenberger had the claimant transported to Acute Care Services

---

[4] There is no indication that State Agency Medical Consultants Edward Beaty, Ph.D., and Thomas Clifford, Ph.D., reviewed and considered the record after December 31, 2007. (AR at pp. 68-69 and 75-76).

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 10**

at Central Washington Comprehensive Mental Health (CWCMH) for an assessment. (AR at p. 412). This assessment resulted in the claimant being psychiatrically hospitalized (involuntarily committed) on December 14, 2011, because of "grave disability." (AR at p. 481). He was discharged to a "Less Restrictive Alternative" (LRA) under the supervision of CWCMH on January 4, 2012, with a diagnosis of "Bipolar I Disorder, most recent episode manic severe" and a Global Assessment Functioning (GAF) score of 25.[5] (AR at p. 482). Claimant returned to see Dr. Rodenberger in March 2013. The doctor continued to diagnose him with bipolar disorder, but currently "hypomanic" and assigned him a current GAF of 55.[6]

Dr. Rodenberger was not asked to opine, and never explicitly opined, whether

---

[5] A GAF score of 25 indicates "[b]ehavior is considerably influenced by delusions or hallucinations or serious impairment in communication or judgment (e.g. sometimes incoherent, acts grossly inappropriately, suicidal preoccupation) or inability to function in almost all areas (e.g., stay in bed all day; no job, home or friends)." *American Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders*, (4th ed. Text Revision 2000)(DSM-IV-TR at p. 34).

[6] A GAF score of 55 indicates "moderate symptoms (e.g. flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." *American Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders*, (4th ed. Text Revision 2000)(DSM-IV-TR at p. 34).

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 11**

the claimant suffered from bipolar disorder or some other medically determinable mental health impairment prior to December 31, 2007. There is nothing in his reports suggesting he ruled out that possibility and indeed, at least one of his reports from October 2011 suggests the contrary: "It is **significant** that although this gentleman has a law degree, he has not been able to practice for at least three years and on a sustained basis for many years." Claimant's job history (AR at p. 169) and earnings record (AR at p. 159) corroborate that he had not practiced law since June 2005. His earnings record shows 2003 as the last year in which any earnings were reported for him. (AR at p. 159). Claimant testified that the last time he practiced law was in the middle of 2005, and that he had one brief writing project in the eight years following. (AR at pp. 40-41).[7] Accordingly, the current record does not permit the unequivocal conclusion that claimant did not have a medically determinable mental health impairment prior to December 31, 2007, notwithstanding the fact the record appears not to contain a mental health diagnosis from an "acceptable medical source" between July 1, 2005 and December 31, 2007.[8]

---

[7] While the claimant reported in July 2006 that he had "opened a new independent office" (AR at p. 223), and in June 2008 that he was "pursuing his career," (AR at p. 578), the record simply does not establish that the claimant resumed the practice of law after June 2005.

[8] Nurse practitioners, physicians' assistants, and therapists (physical and mental health) are not "acceptable medical sources" for the purpose of establishing if a claimant has a medically determinable impairment. 20 C.F.R. §404.1513(a).

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 12**

Here, there is ambiguous evidence whether claimant suffered from a "severe" medically determinable mental health impairment between July 1, 2005 and December 31, 2007, and the evidence of record is currently inadequate to permit a determination whether he did suffer from such an impairment during that period. Accordingly, this case will be remanded for further development of the record for the ALJ to determine whether, considering the record after December 31, 2007, the claimant had a "severe" medically determinable mental health impairment during the period between July 1, 2005 and December 31, 2007, and if so, whether it precluded him from performing substantial gainful activity for a 12 months period.

**REMAND**

Social security cases are subject to the ordinary remand rule which is that when "the record before the agency does not support the agency action, . . . the agency has not considered all the relevant factors, or . . . the reviewing court simply cannot evaluate the challenged agency action on the basis of the record before it, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Treichler v. Commissioner of Social Security Administration*, 775 F.3d 1090, 1099 (9th Cir. 2014), quoting *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744, 105 S.Ct. 1598 (1985).

In "rare circumstances," the court may reverse and remand for an immediate award of benefits instead of for additional proceedings. *Treichler*, 775 F.3d at 1099, citing 42 U.S.C. §405(g). Three elements must be satisfied in order to justify such a

---

Their opinions are, however, relevant to show the severity of an impairment and how it affects a claimant's ability to work. 20 C.F.R. §404.1513(d).

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 13**

remand. The first element is whether the "ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion." *Id.* at 1100, quoting *Garrison*, 759 F.3d at 1020. If the ALJ has so erred, the second element is whether there are "outstanding issues that must be resolved before a determination of disability can be made," and whether further administrative proceedings would be useful. *Id*. at 1101, quoting *Moisa v. Barnhart*, 367 F.3d 882, 887 (9th Cir. 2004). "Where there is conflicting evidence, and not all essential factual issues have been resolved, a remand for an award of benefits is inappropriate." *Id*. Finally, if it is concluded that no outstanding issues remain and further proceedings would not be useful, the court may find the relevant testimony credible as a matter of law and then determine whether the record, taken as a whole, leaves "not the slightest uncertainty as to the outcome of [the] proceedings." *Id*., quoting *NLRB v. Wyman-Gordon Co.*, 394 U.S. 759, 766 n. 6 (1969). Where all three elements are satisfied- ALJ has failed to provide legally sufficient reasons for rejecting evidence, there are no outstanding issues that must be resolved, and there is no question the claimant is disabled- the court has discretion to depart from the ordinary remand rule and remand for an immediate award of benefits. *Id*. But even when those "rare circumstances" exist, "[t]he decision whether to remand a case for additional evidence or simply to award benefits is in [the court's] discretion." *Id*. at 1102, quoting *Swenson v. Sullivan*, 876 F.2d 683, 689 (9th Cir. 1989).

In the case at bar, outstanding issues remain to be resolved and further proceedings would be useful. The court will direct on remand that the ALJ call on the services of a medical advisor (an acceptable medical source) to assist in the determination of whether the claimant suffered from a medically determinable mental heath impairment between July 1, 2005 and December 31, 2007. Should the ALJ conclude the claimant suffered from a medically determinable mental health

**ORDER GRANTING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT- 14**

impairment, but that there is a question about its severity, she should further develop the record as necessary to assist in answering that question. That question, of course, need not be limited to consideration of evidence from an acceptable medical source, but can include consideration of evidence from other medical sources, as well as lay evidence.

There is evidence in the record of alcohol and/or substance abuse by the claimant both during and after the period of July 1, 2005 to December 31, 2007. When there is medical evidence of drug or alcohol addiction, the ALJ must determine whether the addiction is a material factor contributing to the disability. 20 C.F.R. §404.1535(a). In order to determine whether the addiction is a material factor contributing to the disability, the ALJ must evaluate which of the current mental limitations would remain if the claimant stopped using drugs or alcohol, then determine whether any or all of the remaining limitations would be disabling. 20 C.F.R. §404.1535(b)(2). If the remaining limitations would not be disabling, drug or alcohol addiction is a contributing factor material to the determination of disability. *Id*. If the remaining limitations would be disabling, the claimant is disabled independent of the drug or alcohol addiction and the addiction is not a contributing factor material to the disability. *Id*. The claimant has the burden of showing that drug and alcohol addiction is not a contributing factor material to the disability. *Parra v. Astrue*, 481 F.3d 742, 748 (9th Cir. 2007).[9]

---

[9] Under the process outlined in *Bustamante v. Massanari*, 262 F.3d 949, 955 (9th Cir. 2001), and explained in Social Security Ruling (SSR) 13-2p, 2013 WL 621536 (Feb. 20, 2013), in a case where there is DAA (Drug and Alcohol Abuse)

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 15**

## CONCLUSION

Plaintiff's Motion For Summary Judgment (ECF No. 12) is **GRANTED** and Defendant's Motion For Summary Judgment (ECF No. 17) is **DENIED**.  The Commissioner's decision is **REVERSED** and pursuant to sentence four of 42 U.S.C. §405(g), this matter is **REMANDED** to the Commissioner for additional proceedings

---

evidence, an ALJ must consider all evidence at Step Two, including the evidence of DAA, to determine the severity of the claimant's impairments.  If the claimant's impairments are disabling with DAA included, and substance abuse disorder is not the only severe impairment, then the ALJ must proceed through the sequential evaluation process twice, first including DAA, and then second, separating out the DAA.  2013 WL 621536 at * 7.  An ALJ is only compelled to engage in a DAA analysis if she finds the claimant disabled.  *Bustamante*, 262 F.3d at 955, citing *Drapeau v. Massanari*, 255 F.3d 1211, 1214 (10th Cir. 2001).  In other words, if the ALJ concludes the claimant is not disabled, even with DAA taken into account, then the claimant is not entitled to benefits and the ALJ need not go through the sequential evaluation process a second time under 20 C.F.R. § 404.1535.

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 16**

and findings consistent with this order.[10] An application for attorney fees may be filed by separate motion.

**IT IS SO ORDERED.** The District Executive shall enter judgment accordingly and forward copies of the judgment and this order to counsel of record.

**DATED** this   13th   day of March, 2017.

_____
FRED L. VAN SICKLE
Senior United States District Judge

---

[10] The court will not address the ALJ's credibility analysis at this time. In the event, the ALJ determines the claimant had a "severe" medically determinable mental impairment during the relevant period, she will have to revisit her credibility analysis in light of that finding.

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT- 17**